## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Nehemiah Givens, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **1:22cv943 (TSE/JFA)** |
| | ) | |
| Jason Wilson, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Nehemiah Givens ("Petitioner or Givens"), a Virginia civil detainee proceeding pro se,

filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the April

29, 2021 order of the Circuit Court of the City of Richmond, Virginia, which found that Givens

remained a sexually violent predator ("SVP")[1] and recommitted Givens to the custody of the

Department of Behavioral Health and Developmental Services ("DBHDS"). The respondent

filed a Rule 5 Answer and a Motion to Dismiss with supporting briefs and exhibits. [Dkt. Nos.

12-14]. Petitioner was advised of the opportunity to file responsive materials pursuant to

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), in accordance with Local Rule 7(K), and he

responded by filing a reply to the motion to dismiss. [Dkt. No. 19]. Accordingly, this matter is

now ripe for disposition. For the reasons that follow, the Court has determined that respondent's

Motion to Dismiss will be granted, and the petition dismissed with prejudice.

### I. Procedural History and Background

On June 18, 1991, Givens was convicted of attempted rape in violation of Virginia Code

§ 18.2-67.5 in the Circuit Court of the City of Richmond. [Dkt. No. 13-2 at 4]. Commonwealth v.

---

[1] Virginia defines an SVP as "any person who (i) has been convicted of a sexually violent offense, or has been charged with a sexually violent offense and is unrestorably incompetent to stand trial pursuant to § 19.2-169.3; and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts." Va. Code. § 37.2-900. A person found to be an SVP may be civilly committed or placed in a conditional release program. See Va. Code. § 37.2-908(D)-(E).

Givens, Case Nos. CR9100311F-01.[2] On December 18, 2007, the Commonwealth of Virginia

filed a petition for the civil commitment of Givens as an SVP pursuant to Virginia Code § 37.2-

900, et seq ("SVPA").   The Circuit Court appointed counsel to represent Givens after the

Commonwealth instituted proceedings to have him committed as a sexually violent predator

("SVP").[3]  Givens was also appointed an expert by the court. Va. Code § 37.2-907(A) "the judge

shall appoint such experts as he deems necessary.").  Following a determination of probable

cause on February 14, 2008, and discovery, the Circuit Court found Given was an SVP on

September 25, 2008 and committed hm to the custody of the DBHDS. Commonwealth v.

Givens, Case No. CL07-5924-00.[4]

An annual review is required to determine if there is a "need for secure inpatient

treatment." Va. Code § 37.2-910(A). The court initiates the annual review by ordering and then

considering an evaluation. Unless the Commonwealth recommends release, the Commonwealth

bears the burden to prove by clear and convincing evidence that "the respondent remains a

---

[2] Givens was also convicted of burglary. Commonwealth v. Givens, Case Nos. CR9100311F-00. The Circuit Court sentenced Givens to a total sentence of 30 years in prison, with 10 years suspended. See https://www.vacourts.gov/ (last viewed Mar. 8, 2023) (Case Status and Information Tab, Circuit Court Tab, Richmond Circuit Court Tab (search, "Givens, Nehemiah" in Criminal Tab) (hereinafter "Virginia Case Status and Information") (last viewed Mar. 9, 2023)). See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most frequent use of judicial notice of ascertainable facts is in noticing the content of court records") (collecting cases); see, e.g., Lynch v. Leis, 382 F.3d 642, 647 & n.5 (6th Cir. 2004) (taking judicial notice of state court records available to public online). The Court of Appeals of Virginia denied his petition for appeal on March 2, 1992. Givens v. Commonwealth, Record No. 1162-91-2. The Supreme Court of Virginia refused his subsequent petition for appeal on June 17, 1992. Givens v. Commonwealth, Record No. 920396. See Virginia Case Status and Information, see, supra note 1 (Court of Appeals and Supreme Court of Virginia Tabs, search "Givens, Nehemiah") (last viewed Mar. 9, 2023).

[3] The original commitment order states Givens was represented in counsel in that proceeding, and he was represented by counsel, John W. Parsons, in the recommitment proceeding being challenged in the federal petition. The Circuit Court deemed Parson's appointment to be "continuing in nature" and set the next review proceeding for April 29, 2022. [Dkt. No. 13-1 at 3]. Givens' review hearing was continued and is currently scheduled for May 30, 2023. See Virginia's Judicial System, https://www.vacourts.gov/caseinfo/home.html) (Circuit Court Case Status and Information Tab, Richmond Tab, search "Givens, Nehemiah") (last viewed Mar. 9, 2023). On October 13, 2022, the Circuit Court allowed Parsons to withdraw and appointed Jacqueline M. Reiner to represent Givens.

[4] See Virginia Case Status and Information, see, supra note 1 (search, "Givens, Nehemiah" in Civil Tab) (last viewed Mar. 8, 2023).

sexually violent predator." Va. Code § 37.2-910(C). The court can order the respondents release

if determines he is no longer a SVP, but "[i]f the court finds that the respondent remains a

sexually violent predator, it shall order that he remain in the custody of the Commissioner for

secure inpatient hospitalization and treatment or that he be conditionally released. To determine

if the respondent shall be conditionally released, the court shall determine if the respondent

meets the criteria for conditional release set forth in § 37.2-912." Va. Code § 37.2-910(D)

(listing eight specific factors as well as any other factors that the court deems relevant).

Givens first annual review proceeding was initiated in 2009, continued, and then stayed.

The recommitment order was eventually entered on December 29, 2016.[5] Recommitment orders

were entered on November 20, 2018, January 3, 2020, and the last recommitment order, the one

Givens is challenging, was entered on April 29, 2021. Givens has not challenged his prior

recommitment proceedings and states expressly in his habeas petition that he is challenging his

current recommitment pursuant to the Circuit Court's April 29, 2021 Order for Civil

Commitment, which recommits him to the physical and legal custody of the DBHDS. [Dkt. No.

1 at 1, 2].

At the April 29, 2021 hearing, Givens was represented by counsel. The Circuit Court

conducted a review of Givens' civil commitment as required by Virginia Code § 37.2-910.

Pursuant to Virginia Code § 37.2-910, Dr. Daniel Montaldi and Dr. Denis Carpenter were

appointed as experts in this case and their reports were both submitted to the court.

---

[5] From the records available, it appears that there was no annual review process between 2009 and 2016. Instead, it appears that the Circuit Court began the review process in 2009 and that process was not completed until 2016, with no interim review taking place. If as the record suggests, no annual reevaluations of Givens' status as an SVP occurred because the matter was stayed, that was an error – a violation of the Virginia Code; annual evaluations must be made as the statute requires and that process cannot be stayed by a court.

In his September 11, 2020 report, Dr. Montaldi diagnosed Givens with the following mental abnormalities or personality disorders: Antisocial Personality Disorder, Exhibitionistic Disorder, Sexually aroused by exposing genitals to physically mature individuals, and Cannabis Use Disorder, Mild, in a Controlled Environment. and opined that he remains a sexually violent predator. [Dkt. No. 13-4 at 5-9] (Dr. Montaldi's 2020 Annual Review Evaluation). Dr. Montaldi noted that Givens had "done much better this past year than in previous years" and that his "behavior has been gradually improving over the past 1.5 – 2 years" but "[t]here are still some issues that have prevented progression in treatment...." [Id. at 24]. Apparently, Dr. Montaldi's concern focuses on Givens improved behavior being short lived and the need for Givens to complete Phase III of his treatment plan to provide him with adaptive skills and tools to assist him in reintegrating into society. In Phase III, his treatment plan focuses on obtaining employment, managing money and financial matters, maintaining a stable residence, establishing and maintaining good relationships, handling likely risk situations (drugs, alcohol, and living in high crime neighborhoods), and how to explain his SVP commitment and criminal history to prospective employers. [Id. at 25].

Givens was committed to the Virginia Department of Corrections ("VDOC") at a relatively young age and has a sparse employment history, and has not lived outside a structured sentencing since 1991. His recent evaluations at the time of the preparation of the report, showed "a history of failing to follow directives from staff and responding in a hostile manner;" he has "struggled with obeying rules, " and has "associate[d] with and was involved in the activities of residents who disregarded rules;" "signs of sexual preoccupation;" "violations of others' boundaries, and a lack of concern for the impact of his behavior on others;" and "reported drug abuse." [Id. at 20, 21, 23]. Dr. Montaldi concluded that Givens needed to stay in treatment until

he completed Phase III of his treatment plan; outpatient treatment was not appropriate at that
time; that he was not ready for conditional release until he "treat[ed] all conditions, and all
directives from probation officers, as non-negotiable and imperative" and although Givens was
"making progress" he was "not yet at the point where he seems prepared to do this;" and that the
recent improvement Givens had shown reduced his risk to public safety, he was "still a risk" and
that risk could "be avoided with more time in treatment," and therefore he found that releasing
Givens at that time " would be undue risk." [Id. at 27-28].

In his April 4, 2021 report, Dr. Carpenter diagnosed Givens with the following mental
abnormalities or personality disorders: Exhibitionistic Disorder Sexually Aroused by Exposing
Genitals to Physically Mature Individuals (In a controlled environment), Antisocial Personality
Disorder, and Cannabis Use Disorder-Mild in full remission in a controlled environment. [Dkt.
No. 13-5 at 20-21] (Dr. Carpenter's 2021 Second Opinion Report). In addition to the personal
history information contained in Dr. Montaldi's report, Dr. Carpenter noted that Givens was
convicted of indecent exposure in Nottoway General District Court on September 26, 2018,[6] and
sentenced to 12 months in jail with 10 months suspended. Dr. Carpenter further noted that
Givens had not participated "in sex offender services while he was incarcerated with the
VDOC." [Id. at 12, 15]. Dr. Carpenter also noted that Givens had "received 19 institutional
infractions for Indecent Exposure and/or Lewd/Obscene Acts In Presence of Others" while
incarcerated in the VDOC, and that he had also "received a Resident Observation Report for
exposing and masturbating in front of another resident while he has been at the" Virginia Center
for Behavioral Rehabilitation (VCBR). [Id. at 19]. Similar to Dr. Montaldi's report, Dr.

---

[6] This conviction apparently took place while Givens was civilly committed in a facility in Nottoway County.

Carpenter noted that Givens had significant behavior problems essentially throughout the time he has been civilly committed but that there had been recent improvement. [Id. at 15].

Dr. Carpenter opined "Givens' Antisocial Personality Disorder and his Exhibitionistic Disorder in the context of having committed a sexually violent offense would make it difficult for [Givens] to control his predatory behavior and would make it likely [for Givens] to engage in sexually violent acts." [Id. at 20-21]. Dr. Carpenter that while Given's "Cannabis Use Disorder-Mild in full remission in a controlled environment," "poor self-management/behavior control, including the abuse of substances, is one of several major areas of psychological functioning that appear to drive an offender's sexually violent behavior." [Id. at 21]. Dr. Carpenter further opined that "alcohol and drug abuse has not been shown to be a strong predictor in sexually re-offending, it is considered a dynamic (changeable) and acute risk factor that when present can be a contributing factor in sexual recidivism." [Id.]. Dr. Carpenter concluded the Givens "possess[es] a mental abnormality or personality disorder that makes it difficult for him to control his predatory behavior" and that while the treatment program had been successful in reducing the "risk of[Givens] sexually reoffending," that Givens needed "to advance into Phase III of the program, demonstrate consistent pro-social behavior through better self-management/behavior controls, continued to meet program requirement for group attendance and participation and to solidify his treatment" gains. [Id. at 21-22].

Both Dr. Montaldi and Dr. Carpenter opined that Givens continued to require inpatient treatment and Dr. Carpenter stated "that Mr. Givens' Antisocial Personality Disorder and his Exhibitionistic Disorder in the context of having committed a sexually violent offense would make it difficult for [Givens] to control his predatory behavior and would make it likely [for

Givens] to engage in sexually violent acts." Dr. Carpenter did "not see [Givens] as a viable candidate for conditional release just yet. [Dkt. No. 13-5 at 21-22].

The Circuit Court considered the reports of both experts, the other testimony and evidence presented, and determined that the Commonwealth had carried its burden of proof by clear and convincing evidence that Givens had mental abnormalities and personality disorder had not changed and he remained "an undue risk to public safety, and thus remains a sexually violent predator." The Circuit Court also determined that the Commonwealth had carried its burden to establish that there was no "less restrictive alternative to involuntary secure inpatient treatment that would be suitable for [Givens] and public safety;" recommitted Givens to the custody of the DBHDS; and set a review date of April 29, 2022 for his next annual review. [Dkt. No. 13-2 at 2-3]. Givens did not appeal the decision of the Circuit Court and has not filed a petition for a writ of habeas corpus in either the Circuit Court or the Supreme Court of Virginia.

On or about August 10, 2022, Givens filed the instant petition for a writ of habeas corpus, and alleges the following grounds for federal habeas corpus relief:

> Claim 1: Givens "due process" rights were violated because he was recommitt[ed] as an SVP without proof "by clear and convincing evidence" that he remains a sexually violent predator. [Dkt. No. 1 at 5].
>
> Claim 2: Virginia's SVPA, § 37.2-900 "is unconstitution[al] as applied to Givens because the "disorders" he has been diagnosed as having do not make him likely to commit violent sexual offenses in the future. [Id. at 7].
>
> Claim 3: The SVPA § 37.2-912 is unconstitutional as applied to Givens because he has been continuously recommitted as an SVP "without showing that he is an undue risk to public safety." [Id. at 8].

## II. Statute of Limitations

The federal habeas statute, 28 U.S.C. § 2254, directs that a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court." It is well established that detainees under an involuntary civil

commitment scheme such as the SVPA may use a § 2254 habeas petition to challenge a term of confinement. See Duncan v. Walker, 533 U.S. 167, 176 (2001) (nothing in § 2254 requires "that the state court judgment pursuant to which a person is in custody be a criminal conviction" and federal habeas corpus review may be available to challenge the legality of a state court order of civil commitment"). Therefore, this case is governed by the limitations period set forth in the Anti-terrorism Effective Death Penalty Act ("AEDPA").

As relevant to Givens' claims, "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of ... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Because of the periodic review aspect of SVP proceedings, "each state court order continuing [a petitioner's] commitment or denying his challenge to such commitment constitutes a new judgment for purposes of the AEDPA, and therefore starts a new statute of limitations period." Martin v. Bartow, 628 F.3d 871, 874 (7th Cir. 2010); see Ballard v. Cuccinelli, No. 3:10cv524, 2011 U.S. Dist. LEXIS 50415, at *6 n.5 (E.D. Va. May 12, 2011) ("In some circumstances, a petitioner challenging a court's determination that he is a sexually violent predator has one year from each subsequent determination" to file a § 2254 petition) (citing Martin, 628 F.3d at 876), appeal dismissed, 449 F. App'x 242, 242 (4th Cir. 2011); see, e.g., Bell v. Virginia, No. 3:13cv232, 2014 U.S. Dist. LEXIS 88198, *6-7 (E.D. Va. June 27, 2014) (calculating timeliness of a § 2254 petition from the date of the recommitment judgment order and not the original commitment order); Hommel v. Wilson, No. 7:19cv469, 2020 U.S. Dist. LEXIS 121451, *29-31 (W.D. Va. July 9, 2020) (rejecting argument that the federal one-year limitation period under 28 U.S.C. § 2244(d)(1)(A) began to run on date of civil detainee's

8

original commitment order; and finding that the § 2254 petition, which was filed within one year of the date the recommitment order became final, was well within the one year and is timely).

Givens was recommitted to DBHDS custody by the April 29, 2021 judgment. Thus, Givens had until May 29, 2021 to note his appeal of the Circuit Court's ruling. See Va. Sup. Ct. R. 5:9(a) (requiring a petitioner to file a notice for appeal within thirty days of the entry of judgment). Givens failed to note a timely appeal; therefore, his one-year limitations period began running on May 29, 2021 and expired on Tuesday, May 31, 2022. See Gonzalez v. Thaler, 565 U.S. 134, 137 (2012) ("[F]or a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking review expires."). Givens, however, did not file his § 2254 petition until August 19, 2022, eighty days after the statute of limitations had already lapsed. Thus, absent tolling, his petition is untimely. See, e.g., Bell, 2014 U.S. Dist. LEXIS 88198, *7 (civil detainee's petition was filed fourteen days after the statute of limitations lapsed and was therefore untimely and barred); Ballard, 2011 U.S. Dist. LEXIS 50415, at *9-10 ("Because Ballard has not demonstrated any meritorious grounds for equitable tolling of the limitation period, or that one of the later commencement dates for the limitation period applies, see 28 U.S.C. § 2244(d)(1)(B)-(D), the petition must be denied as untimely.").

In calculating the one-year period, the Court excludes the time during which properly filed state collateral proceedings pursued by petitioner were pending. See 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Statutory tolling is inapplicable in this case because Givens never pursued collateral state court relief. See Tinker v. Moore, 255 F.3d 1331,

1333 (11th Cir. 2001) ("even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period").

Equitable tolling applies if a petitioner establishes two elements: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 632 (2010) (citation omitted). Thus, "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Rouse v. Lee, 339 F.3d 238, 256 (4th Cir. 2003). Accordingly, the Fourth Circuit concluded that, for this reason,

> equitable tolling is available only in "those rare instances where —due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." It is appropriate when, but only when, "extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit."

Spencer v. Sutton, 239 F.3d 626, 629-30 (4th Cir. 2001) (citation omitted).

Givens only argument seeking to toll the running of the statute of limitations is that his attorney failed to note his appeal. [Dkt. No. 1 at 13]. This argument fails because "there is no Sixth Amendment right to counsel in civil commitment proceedings." Ramsey v. Runion, No. 2:11cv396, 2012 U.S. Dist. LEXIS 126890, at *13-14 (E.D. Va. Sept. 5, 2012) (citing Vitek v. Jones, 445 U.S. 480, 496 (1980) (plurality opinion); id. at 497-500 (Powell, J., concurring); United States v. Baker, 45 F.3d 837, 843 & n.3 (4th Cir. 1995) (acknowledging that due process does not guarantee an individual in a civil commitment proceeding the right to counsel) (citing Vitek, 445 U.S. at 494-96) (plurality opinion) (other citations omitted)). Thus, as the Fourth Circuit has held, "[i]n the absence of constitutional ineffective assistance of counsel, attorney error is attributable to the petitioner." Rouse, 339 F.3d at 250 (citing Coleman v. Thompson, 501 U.S. 722, 753 (1991)). Accordingly, absent attorney error that constitutes constitutionally

ineffective assistance, "that error can 'fairly be attributable' to [the petitioner] and is not 'external' to his own conduct." Jackson v. United States, 319 F. Supp. 2d 672, 677 (E.D. Va. ) ("[I]neffective assistance of counsel must exist before attorney error can be used to trigger equitable tolling.").[7] In summary, Givens has failed to establish exceptional circumstances tolling the statute of limitations and his petition will therefore be dismissed as untimely.

### III. Exhaustion and Default

Quite apart from the petition's untimeliness, the petition also fails because it is procedurally defaulted. As the Fourth Circuit has held, "a federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). In order to meet the exhaustion requirement, a petitioner "must have presented to the state court 'both the operative facts and the controlling legal principles.'" Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (quoting Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997)). A petitioner must present his federal claims to the appropriate state court in the manner required by the state court, so as to give the state court "a meaningful opportunity to consider allegations of legal error." Vasquez v. Hillery, 474 U.S. 254, 257 (1986). A state prisoner does not "fairly present" a claim for exhaustion purposes when the claim is raised in "a procedural context in which its merits will not be considered." Castille v. Peoples, 489 U.S. 346, 351 (1989).

A petitioner seeking federal habeas relief also procedurally defaults his claims when he "fails to exhaust available state remedies and 'the court to which the petitioner would be required

---

[7] While attorney error that constitutes ineffective assistance of counsel is conduct attributable to the government and may justify tolling the limitations period, Rouse, 339 F.3d at 250, the petitioner must still demonstrate that the government's alleged wrongful conduct prevented him from filing the petition on time. Harris v. Hutchinson, 209 F.3d 325, 330-31 (4th Cir. 2000).

to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (citation omitted). Under these circumstances, a claim is considered simultaneously exhausted and procedurally defaulted so long as "it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). Importantly, however, if "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence," a federal court may not review the simultaneously exhausted and procedurally defaulted claim. Id. (quoting Gray, 518 U.S. at 162).

Respondent asserts that Givens claims are both exhausted and defaulted because he did not raise his claims in state court and, if Givens returned to state court to exhaust the claims, they would be barred by the state habeas statute of limitations—Virginia Code § 8.01-654(A)(2), and the rule of Slayton v. Parrigan, 215 Va. 27, 30, 205 S.E.2d 680, 682 (1974) (a petition for a writ of habeas corpus "may not be used as a substitute for an appeal or writ of error."). Under § 8.01-654(A)(2), the state statute of limitations begins to run on the date the action accrued, which is April 29, 2021 the date upon which his claims are predicated. Consequently, § 8.01-654(A)(2) would bar a state habeas petition filed on or after April 29, 2022. Further, all three claims involve matters that could have been raised at trial and on direct appeal. Each claim would also therefore be deemed defaulted under the rule of Slayton v. Parrigan – that a petition may not be used as a substitute for an appeal or writ of error – if raised in a state habeas petition.[8]

---

[8] Slayton v. Parrigan is an adequate and independent state law ground. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006). Section 8.01-654(A)(2), the state habeas statute of limitations, is also an adequate and independent bar that precludes federal review of a claim. Sparrow v. Dir., Dep't of Corrs, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (recognizing § 8.01-654(A)(2) as an independent and adequate bar).

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman, 501 U.S. at 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton v. Muncy, 845 F.2d 1238, 1241-42 (4th Cir. 1988). A court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

Here, in discussing tolling, the Court has already determined that there was no denial of ineffective assistance of counsel, that Givens' alleged cause (counsel's failure to note the appeal) under Rouse is attributable to Givens, and that there is nothing novel about any of Givens' claims. Further, the record does not establish a miscarriage of justice. The report prepared for the Commonwealth and the second opinion evaluation prepared for Givens, each concluded that Givens needed to continue treatment "in patient;" that "outpatient treatment" was not "appropriate" at that time; that his release presented an "undue risk;" and that he was not "a viable candidate for conditional release just yet." [Dkt. Nos. 13-4 at 27-28; 13-5 at 21-22]. Accordingly, even if the federal petition had been timely filed, Givens claims are defaulted and he has failed to establish cause and prejudice.

****

Respondent also seeks to have Nelson Smith, the Commissioner of DBHDS, substituted as the proper respondent. See 28 U.S.C. § 2243 (the writ shall be directed to the person having custody of the person detained). The Clerk will be directed to substitute Nelson as the proper respondent.

13

## IV. Conclusion

For the foregoing reasons, the motion to dismiss the petition [Dkt. No. 12] must be granted and the petition must be dismissed with prejudice. An appropriate Order shall issue.[9]

Entered this _14th_ day of _March_ 2023.

Alexandria, Virginia

/s/

T. S. Ellis, III
United States District Judge

---

[9] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.